IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
           : NO. 07-322-01
     v.    :
           :
KHEIRALLAH AHMAD    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.       JANUARY 30, 2008

I.  BACKGROUND

    Pursuant to a plea agreement, Defendant Kheirallah
Ahmad pled guilty to a two-count information charging him with
conspiracy to commit tax fraud in violation of 18 U.S.C. §§ 371
and 2, and willful filing of a false tax return in violation of
26 U.S.C. § 7206(1).  Ahmad implemented an under-the-table cash
payroll scheme for the employees of Cousins Food Markets, which
he co-owned with his brothers, resulting in the failure to pay
over $1.5 million in federal taxes.

    Presently before the Court is Ahmad's objection to the
presentence investigation report ("PSI Report") concerning the
enhancement of his sentence under § 3B1.1(a) of the U.S.
Sentencing Guidelines.  The PSI Report alleges that Ahmad
"possessed a leadership role within the conspiracy" and
recommends a four-point offense-level enhancement pursuant to
U.S.S.G. § 3B1.1(a).  PSI Report ¶¶ 36, 41.  Ahmad objects to the

allegations in paragraphs 36 and 41 of the PSI Report, contending that they have no basis.

On December 18, 2007, the Court held an evidentiary hearing to consider Ahmad's objection.  At the hearing, both Ahmad and the Government were afforded an opportunity to call witnesses and present oral argument.  Subsequently, the Court afforded both Ahmad and the Government the opportunity to submit supplemental briefing.  For the reasons that follow, Ahmad's objection will be overruled.

II.  DISCUSSION

A.  Legal Standard

The Sentencing Guidelines provide for a four-point offense-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).[1]

_____

[1]    Section 3B1.1 provides in full:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Factors that the Court must consider in determining whether a defendant is a "leader" or "organizer" include:

> the exercise of decisionmaking authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

United States v. Phillips, 959 F.2d 1187, 1191 (3d Cir. 1992).[2]

The applicability of § 3B1.1 often turns on the final factor--the degree of control exercised over others--because the Third Circuit has interpreted § 3B1.1 to mean that "a defendant's offense level may not be increased . . . in the absence of evidence that he or she managed or supervised someone else." United States v. Fuentes, 954 F.2d 151, 154 (3d Cir. 1992). Therefore, if all co-conspirators share equal responsibility for organizing the offense, and no co-conspirator supervised any other participant in the offense, application of § 3B1.1 is not warranted.  See United States v. Katora, 981 F.2d 1398, 1402-03 (3d Cir. 1992).

The person supervised by the defendant must be a "participant" in the offense, not an innocent party or an "outsider to the fraud."  Id. at 1404-05; United States v.

---

U.S.S.G. § 3B1.1.

[2]     The Government must prove its allegations by a preponderance of the evidence.  See United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007) (en banc).

Badaracco, 954 F.2d 928, 934-35 (3d Cir. 1992) ("[T]o be considered a participant under the Guidelines an individual must be criminally responsible, i.e., s/he must have committed all of the elements of a statutory crime with the requisite mens rea."); see also U.S.S.G. § 3B1.1 cmt. 1 ("A 'participant is a person who is criminally responsible for the commission of the offense, but need not have been convicted.").

Absent evidence that a defendant supervised another participant in the offense, his mere status as "a de jure supervisor" is insufficient to warrant the application of § 3B1.1. United States v. DeGovanni, 104 F.3d 43, 45-46 (3d Cir. 1997) (refusing to apply § 3B1.1 to defendant in police corruption case where only proof of leadership role was "sergeant-status" and where his "activities mirrored those of the other low-level participants"). But see Fuentes, 954 F.2d at 155 n.2 ("The government argued at the sentencing hearing that supervision of people is implicit in the fact that Mr. Fuentes managed the crack house . . . . We express no opinion as to whether the district court should draw such an inference from the evidence on resentencing Mr. Fuentes.").

B.   Application of the § 3B1.1 Factors

1.   Control over other participants

The Government has adduced strong evidence that Ahmad

supervised at least one other important participant in the tax fraud scheme.  The PSI Report states that "[m]any of the [Cousins Food Markets] store employees . . . were paid a small portion of their salary by check and the remainder of their salary by cash." PSI Report ¶ 12.  The amount received by check was "based on the numbers provided by the [stores'] bookkeeper . . . [and] taxes were deducted each week from the employees' check," not the cash payroll.  Id. ¶ 13; see also id. ¶ 14 ("The checks included only a portion of the wages actually paid.").  More important, "Ahmad determined how much cash versus legitimate payroll each employee received."  Id. ¶ 14 (emphasis added).  "At the direction of Ahmad and his brother Sadallah, the employees only clocked in for 20 to 30 hours per week despite working between 60 and 70 hours per week.  The payroll company only issued checks for the hours reported to them, which were substantially less than the actual hours worked."  Id. ¶ 15 (emphasis added).  None of these allegations is in dispute.

At the evidentiary hearing, Ada Gonzalez, the bookkeeper for Cousins Food Markets, corroborated the undisputed allegations of the PSI Report.  Gonzalez testified that it was Ahmad's--or perhaps Ahmad and his brother Sadallah's--decision to change the stores' payroll system from cash-only to part-cash and part-check.  Hrg. Tr., Dec. 18. 2007, at 54:22-55:9.  Gonzalez also testified that she had been instructed, on more than one

occasion, by Ahmad to fill out the store payroll sheets to only include partial amounts of the payments to employees.  Id. at 57:17-59:11.  Gonzalez was then questioned by the Court as to "whether paying individuals some portion of that money by cash and some portion by check, and the cash not then being subject to any tax deductions, whether or not that was legal?"  Id. at 75:1-5.  Gonzalez responded that she understood at the time of the offense that "it was not legal" and that she "had a duty to report her own income."  Id. at 75:6-14.

Therefore, the Government has established that Ahmad supervised another participant in the criminal conduct.  At the very least, Ahmad supervised Gonzalez's unlawful reporting of employee payroll.  It is clear from the testimony that Gonzalez did not share responsibility with Ahmad, but rather took orders from him.  See Fuentes, 954 F.2d at 154.  In addition, because Gonzalez was aware that her conduct was unlawful, she was a "participant" in the criminal endeavor.  See Badaracco, 954 F.2d at 934-35.  In light of this admission, it is of no import that Gonzalez has not been indicted or convicted of any offense.  See U.S.S.G. § 3B1.1 cmt. 1.  Moreover, Ahmad's supervision of Gonzalez embodies the core of the tax fraud scheme, as it reveals how he used his supervisory position to generate fraudulent payroll documents and evade paying taxes.

In contrast, the Government has not adduced evidence,

6

beyond the uncontested portions of the PSI Report, of Ahmad's control of other participants in the fraud.  Specifically, the hierarchy and interaction between Ahmad and his brothers remains unclear.  Nonetheless, that Ahmad may have shared his control over other participants with his brothers does not preclude application of § 3B1.1.  See United States v. Phillips, 959 F.2d 1187, 1192 (3d Cir. 1992) ("Guidelines § 3B1.1 allows for a finding that more than one person held an aggravating role in the organization and provides for sentencing accordingly.").  It is also unknown whether employees other than Gonzalez were willing "participants" in the fraud or were outsiders to the fraud.  See Badracco, 954 F.2d at 935 (refusing to infer, absent some evidentiary showing, that "the developers might or should have known that there was something unsavory about [the] loans").

Nonetheless, given the centrality of Gonzalez's participation in the fraudulent scheme, Ahmad's control over her takes on added significance.  Were it not for Ahmad's control of Gonzalez, the bookkeeper, fraudulent payroll documents could not have been generated.  In short, Ahmad's control of Gonzalez was essential to the execution of the scheme.

Because of this clear showing that Ahmad controlled an important participant in the offense, the cases cited by Ahmad are easily distinguished.  See Fuentes, 954 F.2d at 153 ("There is no evidence in the record indicating that anyone worked for or

7

under the direction of Mr. Fuentes . . . ."); <u>DeGovanni</u>, 104 F.3d
at 45 (refusing to apply § 3B1.1 where defendant's conduct was
indistinguishable from "other low-level participants" and no
evidence supported his "role as a manager or supervisor").

Rather, the facts here resemble those cases in which §
3B1.1 has been applied.  <u>See, e.g.</u>, <u>United States v. Chau</u>, 293
F.3d 96, 103 (3d Cir. 2002) ("Here, Chau ordered Turner to clean
up the building.  Later, he asked Fantom to help.  Then, Chau
worked with Fantom and Turner to dump the asbestos at various
sites in the city.  Chau's participation in the cleanup indicates
that he was in a position to exercise supervisory control over
both Fantom and Turner."); <u>United States v. Bethancourt</u>, 65 F.3d
1074, 1081 (3d Cir. 1995) ("[T]he telephone conversations between
Haynes and Bethancourt concerned only Haynes delivering the
cocaine to Bethancourt; it did not involve splitting profits
derived from the cocaine sale or selling the cocaine jointly.").

2.  <u>Decision-making authority</u>

The Government has produced substantial evidence of
Ahmad's decision-making authority.  As noted above, Ahmad
"determined how much cash versus legitimate payroll each employee
received" and instructed that employees be paid partly by cash
and partly by check.  PSI Report ¶¶ 14-15; Tr., Dec. 18. 2007 at
54:22-55:9.  The Court also notes, but does not rely solely on,

8

Ahmad's undisputed status as owner and "boss" of Cousins Food Markets.  See U.S.S.G. § 3B1.1 cmt. 4 ("stating that "titles such as 'kingpin' or 'boss' are not controlling").  Ahmad's supervisory position at Cousins Food Markets provides some circumstantial evidence of his decision-making authority. See Fuentes, 954 F.2d at 155 n.2.  Such an inference is particularly warranted here, where the fraudulent conduct was intimately intertwined with Ahmad's responsibilities as owner and supervisor of Cousins Food Markets and where Ahmad's activities did not "mirror[ ] those of the . . . low-level participants." DeGovanni, 104 F.3d at 45-46.


            3.  Nature of participation

        The nature of Ahmad's participation in the scheme was also substantial.  As discussed above, Ahmad directly instructed and supervised Gonzalez in generating the fraudulent payroll documents.  In addition, only Ahmad and his brother Sadallah could access the store's automated cash register system and "skim" receipts from the registers, concealing them from the Internal Revenue Service.  See Tr., Dec. 18. 2007, at 65:13-66:5.


            4.  Larger share of fruits of the crime

        There is no direct evidence that Ahmad received or was to receive a larger share of the fruits from the tax fraud.  As

one of the owners of Cousins Food Markets, however, Ahmad stood to benefit from the widespread under-reporting of taxable payroll more than the individual rank-and-file employees, who would receive a comparatively small tax benefit.

> 5.   Participation in planning of the
>          offense and recruitment of accomplices

There is no evidence of Ahmad's participation relative to other co-conspirators in the planning of the tax fraud or the recruitment of accomplices.

> 6.   Nature and scope of illegal activity

It is undisputed that the instant tax fraud conspiracy was both long-running and extensive.  The conspiracy lasted from about 1999 to 2004, resulting in about $3.6 million in under-the-table cash wages.  PSI Report ¶ 13.  In addition, the conspiracy was not limited to Ahmad and Gonzalez, but rather extended to at least Ahmad, his brothers, and many employees of Cousins Food Markets.  See PSI Report ¶¶ 19-21.  The execution of such a vast conspiracy would require a high level of organization.

III. CONCLUSION

The preponderance of the evidence indicates that Ahmad was an organizer and a leader of the tax fraud conspiracy.  Ahmad exercised control over an important participant in the fraud,

without whom the conspiracy could not have been successful.  He possessed considerable decision-making authority by virtue of both his substantial involvement in the scheme as well as his supervisory position at Cousins Food Markets, the occupational responsibilities of which closely intertwined with his fraudulent acts.  Accordingly, because the four-point offense-level enhancement under § 3B1.1 is warranted in this case, Ahmad's objection to the PSI Report will be overruled.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 07-322-01 |
| v. | : | |
| | : | |
| KHEIRALLAH AHMAD | : | |

## O R D E R

**AND NOW**, this **30th** day of **January, 2008,** it is hereby

**ORDERED** that Defendant's objection to paragraphs 36 and 41 of the

presentence investigation report is **OVERRULED.**


**AND IT IS SO ORDERED.**


 S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**